IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 11 – BANKRUPTCY** |
| | : | **APPEAL** |
| **KOLESZAR FARM LLC,** | : | |
| *Debtor* | : | **No. 21-5145** |
| | : | |

## MEMORANDUM

PRATTER, J.                                                                                    APRIL *29*   , 2022

Debtor Koleszar Farm, LLC asks this Court to stay an order of the Bankruptcy Court. The Bankruptcy Court annulled the automatic stay generally imposed under 11 U.S.C. § 362 and 11 U.S.C. § 1301. Koleszar Farm now seeks a stay of that order—in effect, reinstating the automatic stay—so that it can proceed with its bankruptcy petition without losing the property at issue. But Koleszar Farm's request is improper for many reasons. Therefore, this Court denies the emergency motion for stay.

### BACKGROUND

Given the unusual procedural posture of this emergency motion, the Court does not have the benefit of a full record. The Court thus relies on the parties' briefing and representations to the Court at the oral argument to establish the facts material to this motion.

This case stems from two crisscrossing tracks of litigation: an extended state court litigation and a federal bankruptcy petition. Start with the state court track. Manuel and Judith Antunes had a mortgage on their property at 348 Pineville Road, Newtown, Pennsylvania, 18940 ("the property") of which Wilmington Trust National Association ("the Bank") was the record holder. Doc. No. 13-1, at 1 & ¶ 2. The Bank initiated a foreclosure action in August 2017 in the Bucks County Court of Common Pleas. *Id.* ¶ 3. That litigation has lasted for the last five years. The state

1

court ordered the property foreclosed. Throughout 2019 and 2020, the Bank and the Antunes tried to resolve the foreclosure action amicably by attempting to renegotiate the terms of the loan and certain loan modification agreements; meanwhile, the sale of the property was repeatedly scheduled and then delayed. *See* Doc. No. 13, at 5–6; Doc. No. 13-1, at 3–6.

On April 8, 2021—prior to the property being sold—the Antunes created Koleszar Farm, LLC as a limited liability company in the Commonwealth of Pennsylvania, with two members, Mrs. Antunes and her daughter. Doc. No. 12, at 2–3; Doc. No. 13, at 7. That same day, the Antunes, the parties to the mortgage, transferred the property at 348 Pineville Road to the newly created Koleszar Farm, LLC without informing the Bank of this transfer. Doc. No. 12, at 2–3. The next day, the Antunes filed an emergency motion in state court to stay the sale scheduled for that day; the state court granted the motion.[1] Doc. No. 12, at 3; Doc. No. 13-1, at 10.

On June 11, 2021, the sale was again set to move forward. The Antunes again filed an emergency motion to stay that sale, which the state court denied.[2] Doc. No. 12, at 3. Bids were scheduled to take place between 12:00 p.m. and 3:00 p.m. Doc. No. 5 ¶ 2. But, at approximately 11:10 a.m., Koleszar Farm filed a Chapter 11 bankruptcy petition in federal Bankruptcy Court. *Id.* ¶ 3. The Sheriff's sale went forward, however, and the Bank purchased the property. Doc. No. 13, at 8. At oral argument, both parties confirmed that the Bank is now the owner of the property.

Shifting to the federal track, Koleszar Farm moved forward with its Chapter 11 bankruptcy petition. In August 2021, Koleszar Farm filed its bankruptcy schedules, revealing that it had no

---

[1] The Bank claims that the Antunes continued to represent in their filings in state court that they were the owners of the property, even though they had apparently transferred the property to Koleszar Farm, LLC. While that may be true and may be further evidence of Koleszar Farm acting in bad faith, the Court has no record upon which to verify that fact.

[2] The Antunes allege that this was a motion to enforce the terms of the loan modification, which the state court misconstrued as a motion to delay the Sheriff's sale. Doc. No. 13, at 8. Even construing this procedural fact in favor of the Antunes, however, they do not suggest that they ever attempted to appeal this order in the state court. For the same reasons described more fully below, it is not for this Court to interfere to correct that, assuming it is even in need of correction.

significant assets beyond the property, that Koleszar Farm had no income and no evidence of being a business, and that its sole creditor was the Bank. Doc. No. 12, at 4. The Bankruptcy Court scheduled a hearing for two months later because Koleszar Farm had said that it needed time to conduct discovery. *Id.; see also Dkt. Entry 62, In re Koleszar Farm LLC*, No. 21-br-11653 (Bankr. E.D. Pa. Aug. 25, 2022). Koleszar Farm did not, however, seek any discovery until approximately one week before the hearing when it issued a subpoena to depose one of the Bank's attorneys. Doc. No. 12, at 5. Koleszar Farm only served notice of this subpoena on the Bank two days before the evidentiary hearing. *Id.*

On November 4, 2021, the Bankruptcy Court issued a series of orders. As relevant here, upon motion of the Bank, the Bankruptcy Court ordered that the automatic stay be annulled and granted *nunc pro tunc* and provided ongoing *in rem* relief to the Bank; functionally, this meant that the sale of the property was valid and did not violate any automatic stay. Order, Doc. No. 78, No. 21-br-11653 (Bankr. E.D. Pa. Nov. 4, 2021). The Bankruptcy Court promptly dismissed the case but retained jurisdiction. Order, Doc. No. 81, No. 21-br-11653 (Bankr. E.D. Pa. Nov. 4, 2021).

Switching back to the state litigation track, on November 29, 2021, the Bank posted a Notice to Vacate on the property, notifying the Antunes that they needed to vacate the property. Doc. No. 12, at 5. On December 17, 2021, the Bank filed an Ejectment Complaint. *Id.* at 6. This Ejectment Complaint was served personally on Mrs. Antunes, who also accepted service on behalf of Koleszar Farm. *Id.* On January 31, 2022, a notice was sent to the Antunes and Koleszar regarding the Ejectment Complaint, explaining that a judgment would be entered in favor of the Bank if no action was taken within ten days of the notice. *Id.* An Ejectment Judgment was entered by default on or around February 11, 2022. *Id.* The Bank then filed a Writ of Possession on February 14, 2022. *Id.* On March 7, 2022, Mrs. Antunes was again served notice personally and

she also accepted on behalf of Koleszar Farm. *Id.* Mrs. Antunes was notified of the lockout date and time of April 22, 2022, at 9:00 a.m. *Id.* Neither the Antunes nor Koleszar Farm sought to appeal the Ejectment Judgment nor sought to stay the judgment in state court.

On April 21, 2022—one day before the scheduled lockout—Koleszar Farm filed two emergency motions in federal court, one in the Bankruptcy Court and one in this Court. Koleszar Farm asked the two courts to stay the Bankruptcy Court's initial order annulling the automatic stay and the state court's Writ of Possession pending its appeal of the full underlying bankruptcy petition. While this Court held a telephone conference in an attempt to better understand the nature of the bankruptcy appeal and Koleszar's emergency motion, the Bankruptcy Court denied Koleszar's emergency motion pending in that court. Order, Doc. No. 111, No. 21-br-11653 (Bankr. E.D. Pa. Apr. 21, 2022).[3] This Court granted a temporary stay and ordered supplemental briefing from the parties. This Court also extended the temporary stay order to hear oral arguments on the motion.

### DISCUSSION

Once the Bankruptcy Court issued its order annulling the automatic stay, and Koleszar Farm appealed, this Court had the authority to reimpose the stay. *See* 28 U.S.C. § 158(a); *In re Miles*, 436 F.3d 291, 294 (1st Cir. 2006). But there are strong countervailing reasons why this Could should not use that authority in this case.

Koleszar Farms packages its motion as seeking a stay of the Bankruptcy Court's order annulling the automatic stay, but in reality, Koleszar Farms is asking this Court to do something altogether different. The Bank filed the Ejectment Complaint and served the Ejectment Complaint

---

[3] In its Order, the Bankruptcy Court explained that because the Writ of Possession in the state court had issued on February 23, 2022, was to be executed on April 22, 2022, and that Koleszar had known about that for almost two months at the time it filed the emergency motion in the Bankruptcy Court, the belated motion "was filed in bad faith." Order, Doc. No. 111 n.1., No. 21-br-11653.

on Mrs. Antunes personally and as a representative of Koleszar Farm. The state court then properly entered default and neither Koleszar Farm nor the Antunes sought to appeal that default. The state court then properly issued the Writ of Possession;[4] that writ was served on Mrs. Antunes personally and as a representative of Koleszar Farm. Neither the Antunes nor Koleszar Farm sought to appeal the Writ of Possession nor sought a stay in state court to prevent the scheduled lockout. Based on these facts, Koleszar Farm is functionally seeking to have this Court act as an appeals court of a state court judgement. But this is problematic.

## I.   This Court Cannot Conduct Appellate Review of State Court Proceedings

Koleszar Farm is seeking, in substance, for this Court to review the state court judgments and stay them. But Koleszar Farm has not even suggested that the state court somehow got it wrong, much less articulated how. Even if Koleszar Farm had made a compelling argument that the state court decisions were incorrect, this Court would not have jurisdiction to review or overturn them. Under the *Rooker-Feldman* doctrine, a federal district court lacks subject matter jurisdiction to exercise appellate jurisdiction over state court judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005). Here, despite many opportunities to do so, Koleszar has not appealed any of the state court's judgments within the state system established for that very purpose.[5]

---

[4] A writ of possession is simply the legal means for executing on a judgment of possession. Pa. R. Civ. P. 3160.

[5] In its brief, Koleszar also argues that this Court is not required to abstain from exercising jurisdiction in this this case under 28 U.S.C. § 1334(c)(2). Doc. No. 13, at 13–14. Of course, this is irrelevant anyway because no party has made a motion that this Court must abstain. 28 U.S.C. § 1334(c)(2). But, as Koleszar points out, a Court considering mandatory abstention would need to determine whether the proceeding is based on a state law claim. *Id.* Here there is a very strong argument, as Koleszar conceded at oral argument, that the real issue in this case sounds in contract—whether Koleszar is the rightful owner of the property (or whether it even could be) under the terms of the mortgage contract. Thus, if there had been a motion to this effect, there would be a good reason for this court to abstain from exercising jurisdiction. Plus, that same section orders federal courts not to exercise jurisdiction in a case where the only jurisdiction arises from the filing of the bankruptcy petition itself. That appears to be precisely the case here.

## II. The Court Will Not Reimpose the Automatic Stay Just for the Sake of a Stay

Even reading Koleszar Farm's request as just a request to reimpose the automatic stay, the Court is not inclined to reimpose the stay, for Koleszar Farm has not articulated what the automatic stay would accomplish, beyond delaying the inevitable.

In considering a stay, the Court focuses on four considerations: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

Koleszar Farm has not met even the first consideration. In Koleszar Farm's view, if this Court reinstated the automatic stay, Koleszar Farm would retain the property and be able to appeal the Bankruptcy Court's order annulling the automatic stay, and, if successful in overturning the Bankruptcy Court's order, the *nunc pro tunc* relief to the Bank would be void, making the sale of the property also void *ab initio*. Doc. No. 13, at 13. But Koleszar Farm has never explained *how* it could succeed on the merits on appeal.

The Bankruptcy Court acted according to its broad power to annul the automatic stay. "The discretion afforded a bankruptcy judge to grant relief from the automatic stay includes the authority to grant an annulment of the stay, thereby validating an act done in violation of the stay which would otherwise be deemed to be *void ab initio*." *In re Wilkerson*, No. 03-br-36593, 2004 WL 2977564, at *3 (Bankr. E.D. Pa. Dec. 8, 2004) (citing *In re Siciliano*, 13 F.3d 748, 751 (3d Cir. 1994)). A bankruptcy court considering annulling the automatic stay should consider "whether the creditor had knowledge of the debtor's bankruptcy filing, whether the debtor is guilty of some inequitable conduct, such as abusive and/or repetitive bankruptcy filings, whether the debtor has

6

encouraged the creditor to proceed notwithstanding the stay or only asserts the stay when it is unsuccessful in the outcome of an action it allowed to proceed, and whether the expenses of beginning anew with its enforcement remedy outweigh the benefit to anyone." *Id.*

Koleszar Farm bears the burden of demonstrating that the Bankruptcy Court's order annulling the automatic stay was legally incorrect. Were Koleszar to be granted this stay so that it could appeal the Bankruptcy Court's order annulling the automatic stay, this Court would be the one to review the Bankruptcy Court's order. *See In re Siciliano*, 13 F.3d at 750. Yet, despite being in front of the Court in which it hopes to seek appellate review, Koleszar Farm has never articulated how the Bankruptcy Court committed a legal error, much less a reversible one.

Nor has Koleszar Farm explained how its filing of a bankruptcy petition would in any way affect the Bank's foreclosure actions against the contractual mortgagors, the Antunes. Koleszar Farm is admittedly *not* a party to the mortgage contract between the Bank and the Antunes. That means that Koleszar Farm, with its bankruptcy petition, has sought to halt a foreclosure on a property for which Koleszar was not a contractual signatory to the mortgage and, as the state court found, is not the rightful owner.

Koleszar only sought an emergency motion in federal court on Friday afternoon when the lockout was scheduled to take place on Monday morning. In Koleszar's view, victory would be the re-imposition of the automatic stay in and of itself. But that is not a likelihood of success on the merits, that is only a guarantee of delay. On the record in front of this Court, it is clear that Koleszar only asserted the stay when it was unsuccessful in the foreclosure action in state court that Koleszar allowed to proceed by not appealing and by not seeking any stay. *See In re Wilkerson*, 2004 WL 2977564, at *3. Or, alternatively, Koleszar's actions appear to be inequitable conduct to

thwart state proceedings. *Id.* Either way, the Court will not reward such maneuvering by reimposing the automatic stay.

CONCLUSION

For the foregoing reasons, the Court denies Koleszar's emergency motion to stay. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE